**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ann Garcia,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Salvation Army,<br><br>　　　　Defendant. | Consolidated Cases<br><br>No. CV-14-02225-PHX-DGC<br>No. CV-15-01444-PHX-SPL<br><br>**ORDER** |

Plaintiff Ann Garcia asserts claims against her former employer, Salvation Army, for religious discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); failure to engage in the interactive process in violation of the Americans with Disabilities Act ("ADA"); and intentional infliction of emotional distress ("IIED"). Salvation Army moves for summary judgment. Doc. 147. Garcia has filed two separate motions, each of which requests partial summary judgment on her interactive process claim. Docs. 150, 151. Briefing is complete and no party requests oral argument. The Court will grant Defendant's motion and deny Plaintiff's motions.

**I.　Background.**

In late 1999, Ann Garcia began attending religious services at the Salvation Army's Estrella Mountain Corps ("EMC") in Avondale, Arizona. Doc. 148-2 at 11. In December 2002, EMC hired Garcia to serve as an assistant to Major Angie Medina, the pastor of the church. Doc. 148-9 at 5-6. In July 2010, Majors Dionisio and Arlene

Torres (husband and wife) replaced Major Medina as EMC's pastors. Doc. 148, ¶ 36. A few months later, Garcia transitioned to a position as social services coordinator. Doc. 148-9 at 11. In December 2011, Garcia stopped attending religious services at EMC because she felt that "policies and procedures [were] being broken and not enforced by" the new pastors. Doc. 164, ¶ 2. She continued to work at EMC.

In March 2012, Garcia received her first annual performance review at EMC. Doc. 148-12 at 11-12. Major Arlene Torres rated Garcia as good, very good, or outstanding with respect to twelve of the fourteen performance factors. *Id.* Garcia received a rating of "improvement needed" on two factors, creativity and initiative. *Id.* at 11. Overall, she received a rating of very good, and was awarded a 2% raise. *Id.* at 12.

In June 2013, Garcia received a second performance review. *Id.* at 13-14. Garcia received a rating of good, very good, or outstanding with respect to eleven of the fourteen performance factors. *Id.* She received a rating of "improvement needed" on three factors: attendance, creativity, and attitude. *Id.* Her interpersonal relationship with her supervisor was also rated as "improvement needed." *Id.* at 14. Major Torres offered the following criticisms of Garcia's work:

> Ann's attendance needs drastic improvement, and we hope to see a dramatic decrease in her days off in the coming year. . . . Would like to see Ann increase her creativity as it relates to her assigned tasks. . . . Ann does what it takes to get the job done, but lacks enthusiasm and a positive attitude. . . .
>
> Ann has a tendency to mix personal feelings and business issues. She needs to do whatever it takes to keep personal and business issue[s] separate. She has been inappropriate in her communication with others, and we expect that she refrain from gossip and negative comments.
>
> Ann keeps an acceptable attitude, when she is left alone, but tends to spiral into a negative attitude when required to interact with her supervisor(s), or given directives. Ann needs to learn to be more respectful in her attitude towards everyone, as our expectation is that she be courteous and professional at ALL times.

*Id.* at 13-14. Garcia received an overall rating of "good" and a 2% raise. *Id.* at 14.

In response to this performance review, Garcia filed an internal grievance. *Id.* at 5-6. She complained that her performance evaluation constituted "a very negative attack

on [her] character," and that it was unsupported by evidence. *Id.* at 5. She stated: "I have been very disappointed and frustrated with the way I have been treated by Captain Arlene Torres ever since my husband and I left the church. I feel discriminated against." *Id.* She asked for a reevaluation. *Id.*

After Garcia filed this grievance, she learned that a client, Rosa Novoa, had filed a written complaint against her on July 10, 2013. Garcia asked to see a copy of the complaint, but Major Arlene Torres denied the request, citing an interest in protecting client confidentiality. Doc. 161-17 at 2. Garcia then filed another grievance. Doc. 148-12 at 2-3. Salvation Army made several attempts to schedule a meeting to address Garcia's grievances, but due to scheduling conflicts and Garcia's subsequent leave of absence, the meeting never took place. Doc. 148-7 at 19-20. On November 5, 2013, Garcia filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging religious and age discrimination and retaliation. Doc. 148-12 at 8. The charged was dismissed on July 9, 2014. *Id.* at 9.

Garcia was granted leave from Salvation Army in October 2013 to address widespread pain, chronic fatigue, insomnia, and muscle and joint stiffness related to fibromyalgia. Doc. 148-16 at 14. The leave was extended several times. Garcia's rheumatologist approved her to return to work "without restrictions" beginning May 26, 2014. Doc. 148-19 at 19. Garcia did not return to work that day. On May 27, she sent an email to Jan Hoffer, Human Resource Generalist for Salvation Army's Southwest Division, stating the following:

> I feel that I am not ready to go back into the exact same working environment which my doctors have advised against. There seems to be a mental block/barrier and this has to do a lot with the Novoa complaint that was never made available to me[.] I am requesting an accommodation . . . My accommodation would be that a copy or summary of this complaint . . . be made available to [m]e before I return to work.

Doc. 148-18 at 13.

Hoffer responded that Salvation Army's policy was not to provide employees with copies of client complaints and that "[i]n order to grant your requested accommodation,

we would need additional information including a doctor's note from an appropriate medical provider establishing that you have a disability and that providing the original copy and/or summary is necessary to enable you to perform the essential functions of your position." *Id.* at 15. Garcia responded that she "did not believe a medical certification would be necessary" because "there is already a lot of documentation and information on this to make a decision." *Id.* at 17. On June 6, 2014, Hoffer provided Garcia with paperwork for her doctors to complete in support of her requested accommodation, as well as a medical release form. Doc. 148-19 at 2-6. Garcia responded that her doctor was on vacation, and attached medical documentation she had already provided Salvation Army in support of her prior leave of absence. *Id.* at 11. Again, Garcia stated her view that Salvation Army "ha[d] enough information and documentation on file to make a decision on this request for accommodation." *Id.*

On June 17, 2014, Hoffer wrote to Garcia that the documentation she provided did not support her request for accommodation and was not sufficient to justify her continued absence, since it pre-dated the letter which released Garcia to return to work with no restrictions. Doc. 148-20 at 3-4. Hoffer also provided the following written summary of the Novoa Complaint:

> Generally, the Novoa's [sic] were upset as they felt that they were refused assistance in a way that showed a lack of good manners and a willingness to help, and, in particular, that they were refused a new appointment, that they were hung up on multiple times, and that, when offered a new appointment, the first one offered was a good deal in the future when they were facing an emergency situation.

*Id.* at 4. Garcia was not satisfied with this summary. *Id.* at 3. She requested to see the entire complaint, even as she acknowledged that her request was "unusual," that the "medical documents do not address [her] specific accommodation," and that her most recent medical records indicated that she was able to work "without restriction." *Id.*

Although Hoffer's summary was responsive to Garcia's original request for accommodation, Garcia did not return to work. Nor did she ever provide Salvation Army with documentation indicating that she needed to see the Novoa Complaint as a

reasonable accommodation. Doc. 148-5 at 28. On July 10, 2014, Salvation Army notified Garcia that she was considered self-terminated because she had incurred three consecutive unexcused absences. Doc. 148-20 at 9.[1] Eight days later, Garcia filed another charge of discrimination with the EEOC alleging disability discrimination. Doc. 148-20 at 11. The EEOC dismissed this charge on April 29, 2015. *Id.* at 12.

**II.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Analysis.**

**A.     Title VII.**

Title VII prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation against employees for opposing an unlawful employment practice or participating in a Title VII proceeding.

---

[1] In fact, Garcia's position had been eliminated in May 2014; however, she was not informed of this at the time because Salvation Army prefers to conduct lay-offs in person so that it can discuss alternative employment options. Doc. 148-20 at 15.

§ 2000e-3(a). These prohibitions do not apply "to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." § 2000e-1(a).

Garcia asserts that she was subjected to discrimination, retaliation, and hostile work environment following her decision to stop attending her supervisor's church. Doc. 31 at 1-3. Salvation Army moves for summary judgment on these claims pursuant to § 2000e-1(a) – hereinafter referred to as the religious organization exemption.

As a preliminary matter, the Court must determine whether Salvation Army waived the religious organization exemption by failing to assert it as an affirmative defense. The Court concludes that waiver could not have occurred. Courts have repeatedly held that the religious organization exemption "cannot be waived by either party." *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000) (citing *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991); *Siegel v. Truett-McConnell Coll., Inc.*, 13 F. Supp. 2d 1335, 1345 (N.D. Ga. 1994)). That is because the exemption does not simply confer a privilege on religious organizations, but instead establishes a limit on federal jurisdiction, designed to accommodate the free exercise of religion and prevent federal courts from becoming entangled in religious matters. *See* 42 U.S.C. § 2000e-1(a) (providing that "[t]his title shall not apply" to religiously-motivated employment decisions by religious organizations); *cf. Duke v. Absentee Shawnee Tribe of Okla. Hous. Auth.*, 199 F.3d 1123, 1126 (10th Cir. 1999) (Title VII's exemption of claims against Indian tribes is a limit on federal jurisdiction). Once Congress decides that federal courts should not have authority to decide a particular type of case, courts are prohibited from deciding those cases. Nothing the parties do can override Congress' decision to limit the courts' authority. *See Duke*, 199 F.3d at 1126 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982)).[2]

---

[2] Garcia argues that she should be allowed additional discovery in the event the Court rejects her waiver argument (Doc. 162 at 19), but additional discovery would be futile. As explained below, Salvation Army clearly is a religious organization.

Turning to the merits, the Court must decide whether the religious organization exemption applies to Garcia's Title VII claims. It is clear beyond dispute that Salvation Army is a religious organization. Federal courts and the Internal Revenue Service have long recognized that "Salvation Army is a church," *McClure v. Salvation Army*, 460 F.2d 553, 554 (5th Cir. 1972), *accord* Internal Rev. Rul. 59-129 (1959), and the organization has successfully invoked the religious organization exemption in other cases, *see, e.g., Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 246 (S.D.N.Y. 2005). It is also clear that Garcia's claims – which allege that Garcia was subjected to discrimination, retaliation, and hostile work environment based on her decision to stop attending her supervisor's church – relate to the "employment of [an] individual[] of a particular religion." § 2000e-1(a). Since Garcia alleges religious discrimination by a religious organization, her claims are barred by the religious organization exemption.

Garcia's counterarguments are not persuasive. She contends that the religious organization exemption does not apply because she was performing a secular job, for which church membership was not a condition of employment. Doc. 162 at 19. But the religious organization exemption "applies to any activities of religious organizations, regardless of whether those activities are religious or secular in nature." *Lown*, 393 F. Supp. 2d at 247 (emphasis added). Nor is it relevant that Salvation Army is funded, in part, by federal grants. Courts have consistently held that "[a] religious organization that receives federal funds is not required to waive its eligibility for [the religious organization exemption]." *Id.* at 251 (collecting cases).

Finally, Garcia's cases are distinguishable. *Doe v. Salvation Army,* 685 F.3d 564 (6th Cir. 2012), held that religious organizations receiving federal funds were subject to suit under the Rehabilitation Act. Garcia does not assert claims under the Rehabilitation Act.[3] Garcia also cites *Logan v. Salvation Army*, 809 N.Y.S. 2d 846 (N.Y. Sup. Ct.

---

[3] Garcia points to a passage in *Doe* which states that "'religious recipients of federal financial assistance have been and are subject to the prohibitions on discrimination of the four civil rights laws in the same manner as non-religious recipients of federal aid.'" 685 F.3d at 572 (quoting S. Rep. No. 100-64, at 27 (1987)). The four civil rights statutes referred to, however, are Title IX of the Education Amendments of

2005), which allowed a former Salvation Army employee to assert certain religious discrimination claims against the organization. But those claims arose under New York law, not Title VII, and were not subject to Title VII's religious organization exemption. *See id.* at 758 (declining to look to "Federal case law" because "our Court of Appeals has spoken").

**B.    ADA.**

Garcia asserts that Salvation Army violated the ADA by failing to engage in the interactive process in response to her May 27, 2014 request for a copy of the Novoa Complaint. To prevail on this claim, Garcia must show that "(1) she gave notice to her employer concerning her disability and its corresponding limitations, and (2) she [was] qualified to perform the essential functions of the job with or without reasonable accommodation." *Kelley v. Amazon.com, Inc.*, No. 13-36114, 2016 WL 3249750, at *1 (9th Cir. June 13, 2016) (citations omitted). Garcia cannot establish either element.

Garcia did not provide sufficient notice of her disability and its corresponding limitations. Garcia communicated her request for accommodation the day after her rheumatologist approved her to return to work "without restrictions." Doc. 148-18 at 11. In light of this release, it was reasonable for Salvation Army to assume that Garcia was no longer disabled. *See Stevenson v. Abbott Labs.*, 639 F. App'x 473, 474 (9th Cir. 2016) ("[A]fter Plaintiff was released to work, she was not disabled."). Garcia never provided Salvation Army with evidence sufficient to rebut this assumption, despite repeated invitations to do so. *See* Docs. 148-18 at 15 (May 29 email from Jan Hoffer, requesting doctor's note establishing nature of disability and need for accommodation); 148-19 at 2

---

1972, Title VI of the Civil Rights Act, the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975. S. Rep. No. 100-64, at 1. None of these statutes is at issue here, and none prohibits a federally funded religious organization from discriminating on the basis of religion. *See* 20 U.S.C. §§ 1681, 1684 (prohibiting discrimination based on sex or blindness in federally funded education programs); 42 U.S.C. § 2000d (prohibiting discrimination based on race, color, or national origin in federally funded programs); 29 U.S.C. § 794 (prohibiting disability discrimination in federally funded programs); 42 U.S.C. § 6102 (prohibiting age discrimination in federally funded programs).

(June 6 email from Jan Hoffer, providing medical certification and release form); 148-20 at 3-4 (June 17 email from Jan Hoffer, requesting doctor's note).[4] Since the most recent medical evidence indicated that Garcia could return to work without accommodation and Garcia failed to submit evidence to the contrary, Salvation Army was under no obligation to engage in the interactive process. *See Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) ("the employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation").

Nor can Garcia show that she would have been able to perform the essential functions of her job but for the alleged failure to accommodate. Salvation Army provided Garcia with a written summary of the Novoa Complaint on June 7, 2014. Doc. 148-20 at 3-4. That was responsive to Garcia's initial request for accommodation. Doc. 148-18 at 13 (requesting "a copy or summary" of the Novoa Complaint). Even after receiving her requested accommodation, however, Garcia was unwilling or unable to return to work; she did not report at any time between June 7, when she received the summary, and July 10, when she was informed that her employment had been terminated. Given these facts, no reasonable jury could find that Garcia was qualified to perform the essential functions of her job if reasonably accommodated.

### C. IIED.

Garcia contends that Salvation Army intentionally subjected her to emotional distress by mishandling her internal grievances and fabricating the Novoa Complaint. Doc. 31 at 3-7. Salvation Army argues that these allegations do not support a claim for IIED even if they are accepted as true. The Court agrees.

A successful IIED claim must show that (1) the defendant engaged in conduct that was extreme and outrageous; (2) the defendant intended to cause emotional distress, or

---

[4] The medical evidence Garcia did provide pre-dated her work release by more than six months, and thus was insufficient to establish ongoing disability. *See* Doc. 148-19 at 14 (records from July 24, 2013, diagnosing Garcia with depression), 15 (records from October 10, 2013, diagnosing Garcia with fibromyalgia). Moreover, this evidence did not address the accommodation requested by Garcia.

acted with reckless disregard for the possibility that his actions would cause emotional distress; and (3) the plaintiff suffered emotional distress as a result. *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (1987). "A plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citation and quotation marks omitted). "'It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" *Id.* (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)). Whether the conduct complained of is extreme and outrageous is normally a question of law, which goes to the jury only if reasonable minds could differ. *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) (citations omitted).

Garcia alleges that Salvation Army mishandled her internal grievances and fabricated a client complaint against her. Arizona courts have found similar allegations insufficient as a matter of law to state an IIED claim. In *Eichenberger v. Falcon Air Express*, for example, this Court held that the defendant employer's "failure to investigate and respond to [the plaintiff's] allegations of sexual harassment by a high-level manager" was not extreme and outrageous within the meaning of the IIED tort. No. CV-14-00168-PHX-DGC, 2014 WL 3819355, at *3 (D. Ariz. Aug. 4, 2014). And in *Spratt*, the court found no extreme and outrageous conduct where it was alleged that the defendant falsely accused the plaintiff of theft and fired her in retaliation for taking maternity leave. 958 F. Supp. at 459; *see also Mintz*, 905 P.2d at 563 (no extreme and outrageous conduct where defendant allegedly refused to promote plaintiff because of her gender, forced her to return prematurely from a leave of absence, and hand-delivered a letter to her in the hospital stating that her job duties had been reassigned); *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994) (no extreme and outrageous conduct where defendant terminated plaintiff in the middle of the night in front of co-workers, forbade

him to clear personal effects from his desk, had him escorted off premises by armed security guards, and allowed him to use the bathroom on the way out only if accompanied into the stall by the security guards). Thus, even if true, Garcia's allegations would not give rise to a claim for IIED.

Garcia's IIED claim fails for another reason: no reasonable jury could find that Salvation Army fabricated the Novoa Complaint. Salvation Army has produced a declaration from Rosa Novoa, the author of the complaint. Doc. 148-20 at 5-7. Novoa avers that she did file a written complaint against Garcia on July 10, 2013, and provides a true and authentic copy of this complaint. Doc. 161-6 at 2-7. Garcia does not produce any controverting evidence.

**IT IS ORDERED:**

1. Salvation Army's motion for summary judgment (Doc. 147) is **granted**.
2. Garcia's motions for summary judgment (Docs. 150, 151) are **denied**.
3. Salvation Army's motion to strike portions of Plaintiff's reply (Doc. 170) is **denied** as moot.
4. The Clerk is directed to enter judgment according to this order and terminate these actions.

Dated this 12th day of September, 2016.

_____
David G. Campbell
United States District Judge